[No. C003680. Third Dist. Jan. 12, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY DENNIS BOBB, Defendant and Appellant.

COUNSEL

Thomas J. Cooke, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Roger E. Venturi and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

PUGLIA, P. J.— ▮▮▮ In this appeal we hold that contributing to the delinquency of a minor (Pen. Code, § 272) is not a lesser included offense within unlawful sexual intercourse (Pen. Code, § 261.5).

Convicted of unlawful sexual intercourse, defendant appeals. His principal contention on appeal is that contributing to the delinquency of a minor ("contributing") is a necessarily lesser included offense in unlawful sexual intercourse; given that there was substantial evidence of the lesser offense, the trial court erred in failing sua sponte so to instruct the jury.

The victim, 16-year-old Regina R., ran away from home and went to a nearby park where in the company of several males she drank "two beers and some whiskey." That evening she went to Richard Barlese's apartment where she drank more beer and some vodka. She felt the effects of the alcohol and fell asleep on a couch. Barlese woke her and called her into the bedroom. Regina got into bed with Barlese and he tried to touch her "privates." Defendant joined them in the bed and Barlese left.

Regina testified defendant "started taking my clothes off and feeling me." Then he put his penis in her vagina. Jim Edwards walked in during the incident.

Jim Edwards testified that when he walked into the bedroom defendant had his clothes on and was on top of the blankets. Edwards observed no physical activity between defendant and Regina.

Officer Yardic, the investigating officer, testified he had talked to Edwards and told him he was trying to determine if the incident was rape or normal intercourse. Edwards told him "it was just intercourse." Yardic also took a statement from defendant. He asked defendant if he had sex with Regina. Defendant denied that he did, stating that "We just sort of fooled

around. There was no penetration. All that we had done is foreplay." On cross-examination counsel asked Yardic if defendant had not "really said to you . . . they were just playing around, drinking and partying and having fun, and he never really did admit a rape; did he?" Yardic responded: "Correct."

The defense produced no evidence. In argument defense counsel asserted the victim was confused due to intoxication and that the jury should believe Edwards's testimony instead of Yardic's impeaching testimony of what Edwards had told him before trial. Counsel's argument continued: "The District Attorney points out the facts that in Detective Yardic's conversation with the defendant he answered, 'Not really. It was just foreplay.' Is that so impossible? Everybody in there was fooling around."

I

The trial court has a duty sua sponte to instruct on necessarily included offenses which are not inconsistent with the defense. (*People v. Ramkeesoon* (1985) 39 Cal.3d 346, 351 [216 Cal.Rptr. 455, 702 P.2d 613]; *People v. Sedeno* (1974) 10 Cal.3d 703, 715-716 [112 Cal.Rptr. 1, 518 P.2d 913].) Where an offense cannot be accomplished without committing a lesser offense, the lesser offense is a necessarily included offense. (*People v. St. Martin* (1970) 1 Cal.3d 524, 536 [83 Cal.Rptr. 166, 463 P.2d 390]; *People v. Greer* (1947) 30 Cal.2d 589, 597 [184 P.2d 512]; *People v. Krupa* (1944) 64 Cal.App.2d 592, 598 [149 P.2d 416].)

It has been held that contributing is necessarily lesser included within the crime of unlawful sexual intercourse. (*Greer, supra,* 30 Cal.2d at pp. 597-598.) Here, there was substantial evidence not inconsistent with the defense that defendant engaged in sexual foreplay with the 16-year-old victim but did not sexually penetrate her. We must decide whether contributing remains an included offense despite an amendment to one of the statutes which defines its elements.

Penal Code section 261.5 provides: "Unlawful sexual intercourse is an act of sexual intercourse accomplished with a female not the wife of the perpetrator, where the female is under the age of 18 years."

Penal Code section 272 defines contributing and provides in part: "Every person who commits any act or omits the performance of any duty, which . . . causes or tends to cause or encourage any person under the age of 18 years to come within the provisions of Sections 300, 601, or 602 of the Welfare and Institutions Code . . . or to do or to perform any act or to follow any course of conduct or to so live as would cause or manifestly tend

to cause any such person to become or to remain a person within the provisions of Sections 300, 601, or 602 of the Welfare and Institutions Code, is guilty of a misdemeanor . . . ."

The question is whether a violation of Penal Code section 261.5 can be committed without first violating Penal Code section 272. Stated otherwise, is it possible to accomplish an act of intercourse with a female under age 18 without first necessarily causing or tending to cause or encouraging her to come within, become or remain a person within the provisions of Welfare and Institutions Code sections 300, 601 or 602? Although *Greer* authoritatively concluded that it was not possible, we are convinced that the calculus has been altered by an intervening amendment to Welfare and Institutions Code section 601.

Welfare and Institutions Code section 601 formerly conferred juvenile court jurisdiction over a minor who "from any cause is in danger of leading, an idle, dissolute, lewd or immoral life . . . ." (Further statutory references to sections of an undesignated code are to the Welfare and Institutions Code.) Similar language first appeared in 1911: "Who from any cause is in danger of growing up to lead an idle, dissolute, or immoral life." (Stats. 1911, ch. 369, § 1, p. 659.) An earlier statute conferred juvenile court jurisdiction over a minor whose father is incapable of providing a home and who "is in danger of being brought up to lead an idle or immoral life . . . ." (Stats. 1909, ch. 133, § 1, p. 214.) The former language of section 601 quoted above derives most immediately from a predecessor statute enacted in 1915 (Stats. 1915, ch. 631, § 1, p. 1226) and modified in 1961.

As we have indicated, case law held the crime of unlawful sexual intercourse necessarily included the lesser offense of contributing. (*People* v. *Greer, supra,* 30 Cal.2d at pp. 597-598; *People* v. *Norris* (1967) 254 Cal.App.2d 296, 299 [62 Cal.Rptr. 66]; *People* v. *Chester* (1956) 138 Cal.App.2d 829, 830-831 [292 P.2d 573]; *People* v. *Lopez* (1941) 46 Cal.App.2d 857, 858-859 [117 P.2d 10].) As is typical of these cases, the court in *Greer* did not expressly relate the elements of the greater offense to the danger of leading an idle, dissolute, lewd or immoral life. *Greer* simply holds "[i]t is inconceivable that the acts [constituting unlawful sexual intercourse] would not contribute to the delinquency of a minor." (*Greer, supra,* 30 Cal.2d at p. 597.)

For its holding, *Greer* relies on four cases, none of which contains an analysis of the relationship between the elements of the greater and the lesser offenses. In *Rodriguez* v. *Superior Court* (1946) 27 Cal.2d 500 [165 P.2d 1], the court simply concluded that "acts constituting [unlawful sexual intercourse] may also constitute [contributing], since those acts by their

very nature would contribute to the delinquency of the minor . . . ." (At p. 502.) *People* v. *Lopez, supra*, 46 Cal.App.2d 857 upheld a conviction for contributing where defendant was charged with aiding and abetting an act of unlawful sexual intercourse. *Lopez* implicitly assumes without analysis that contributing is necessarily included within unlawful sexual intercourse. (At p. 858.) In *People* v. *Tenner* (1944) 67 Cal.App.2d 360 [154 P.2d 9] the court explicitly asserts in dictum the identical proposition that *Lopez* assumes. (At p. 366.) *People* v. *Krupa, supra,* 64 Cal.App.2d merely recites the holding of *Lopez* in determining that contributing is necessarily included within the crime of transportation of marijuana. (At pp. 600-601.)

Nevertheless, a number of early cases in which the charged offense was contributing hold that involving the minor in sexually related conduct places her in danger of leading an idle, dissolute, lewd or immoral life thereby constituting the crime of contributing. (*People* v. *Oliver* (1916) 29 Cal.App. 576 [156 P. 1005] [defendant enticed the minor into staying with him overnight]; *People* v. *Young* (1919) 44 Cal.App. 279 [186 P. 383] [defendant had intercourse with a female minor]; *People* v. *Cohen* (1923) 62 Cal.App. 521 [217 P. 78] [defendant fondled the minor's limbs and private parts]; *People* v. *McDougal* (1925) 74 Cal.App. 666 [241 P. 598] [defendant offered the minor money to go to a hotel room]; *People* v. *Wortman* (1934) 137 Cal.App. 339 [30 P.2d 565] [defendant caused the minor to share a bed with a man].) And in *People* v. *Lowell* (1946) 77 Cal.App.2d 341 [175 P.2d 846], a case not cited in *Greer,* the court upheld the convictions of two women for contributing to the delinquency of minor boys by having intercourse with them. The opinion repeatedly asserts the defendants' conduct tended to cause the minors to lead idle, dissolute, lewd and immoral lives. (At pp. 344-348.) Thus we are satisfied that what the *Greer* court found "inconceivable" was that an act of unlawful sexual intercourse would not also place the minor female in danger of leading an idle, dissolute, lewd or immoral life.

In 1975, the Legislature deleted from section 601 the language referring to a minor "in danger of leading an idle, dissolute, lewd or immoral life." (Stats. 1975, ch. 1183, § 2, p. 2917.) Case law has not addressed the effect of the 1975 amendment as it concerns the relationship between the crimes of unlawful sexual intercourse and contributing. The People maintain the amendment effectively uncoupled the lesser offense as necessarily included in the greater. We agree.

After the 1975 amendment to section 601, none of the acts remaining as bases for juvenile court jurisdiction in that section is so closely related to the elements of unlawful sexual intercourse that it is necessarily implicated in the commission of the latter offense. The same may be said also of sections

300 and 602. Thus having sexual intercourse with the minor does not bring her within section 602, which confers juvenile court jurisdiction over minors who commit crimes, for the female minor is a victim of unlawful sexual intercourse and has committed no crime.[1] (*Michael M.* v. *Superior Court* (1979) 25 Cal.3d 608 [159 Cal.Rptr. 340, 601 P.2d 572], affirmed (1981) 450 U.S. 464 [67 L.Ed.2d 437, 101 S.Ct. 1200].) Similarly, section 601 now confers juvenile court jurisdiction over minors who "persistently or habitually refuse[ ] to obey the reasonable and proper orders or directions" of parents or who violate a curfew based on age (subd. (a)), or who are habitually truant. (subd. (b).)[2] Even if we presume the "orders or directions" of parents commonly enjoin or encourage their children to refrain from engaging in sexual intercourse, a single act of intercourse does not constitute "persistent[ ] or habitual[ ]" refusal to obey. Similarly, a single act of sexual intercourse has no necessary relationship to curfew violation or habitual truancy.

■ The defendant contends the crime of unlawful sexual intercourse necessarily involves conduct which would bring the victim within the provisions of Welfare and Institutions Code section 300.[3] The defendant relies on

---

[1] Section 602 provides: "Any person who is under the age of 18 years when he violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

[2] Section 601 provides: "(a) Any person under the age of 18 years who persisently or habitually refuses to obey the reasonable and proper orders or directions of his parents, guardian, or custodian, or who is beyond the control of such person, or who is under the age of 18 years when he violated any ordinance of any city or county of this state establishing a curfew based solely on age is within the jurisdiction of the juvenile court which may adjudge such person to be a ward of the court. [¶] (b) If a school attendance review board determines that the available public and private services are insufficient or inappropriate to correct the habitual truancy of the minor, or to correct the minor's persistent or habitual refusal to obey the reasonable and proper orders or directions of school authorities, or if the minor fails to respond to directives of a school attendance review board or to services provided, the minor is then within the jurisdiction of the juvenile court which may adjudge such person to be a ward of the court; provided, that it is the intent of the Legislature that no minor who is adjudged a ward of the court pursuant solely to this subdivision shall be removed from the custody of the parent or guardian except during school hours."

[3] At the time of the offense section 300 provided: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] (a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising care or control, or has no parent or guardian actually exercising care or control. [¶] (b) Who is destitute, or who is not provided with the necessities of life, or who is not provided with a home or suitable place of abode. [¶] (c) Who is physically dangerous to the public because of a mental or physical deficiency, disorder, or abnormality. [¶] (d) Whose home is an unfit place for him or her by reason of neglect, cruelty, depravity, or physical abuse of either of his or her parents, or of his or her guardian or other person in whose custody or care he or she is. [¶] (e) Who has been

a 1970 legislative committee report which recommended repeal of section 601 as unnecessary. The report states: "In substance, practically every minor ever processed through the courts under Section 601 could have been processed under subdivision (a) of Section 600. No matter how you describe a truant, runaway, promiscuous girl, or an unruly, disobedient teen-ager it boils down to the simple fact that their parents are either unwilling or unable to control them. . . ." (Rep. of the Assem. Interim Com. on Crim. Proc. (1970) p. 33.) (Italics added.) (See also Review of Selected Legislation (1976) 7 Pacific L.J. 496, 497-499.)

At the time of the legislative committee report, Welfare and Institutions Code section 600 conferred juvenile court jurisdiction over dependent children including any child as described in subdivision (a) of section 600 "Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control." (Stats. 1965, ch. 535, § 1, 1850-1851.) Section 600 was repealed in 1976 (Stats. 1976, ch. 1068, § 20, p. 4782). It was replaced by section 300 (Stats. 1976, ch. 1068, § 2, p. 4759), subdivision (a) of which has continuously defined as a dependent within the jurisdiction of the juvenile court any child "Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising care or control, or has no parent, guardian, or custodian actually exercising care or control."

For present purposes we may accept the conclusion of the 1970 legislative committee report that a minor who leads a promiscuous life, conduct that was formerly deemed to place her in danger of leading an idle, dissolute, lewd, or immoral life, is also a minor who has "no parent . . . willing to exercise or capable of exercising care or control, or has no parent . . . actually exercising care or control."[4] Thus it may be said that one who

freed for adoption from one or both parents for 12 months by either relinquishment or termination of parental rights and for whom an interlocutory decree has not been granted pursuant to Section 224 of the Civil Code or an adoption petition has not been granted. [¶] (f) It is the intention of the Legislature in enacting the amendments to subdivision (a) enacted at the 1985-86 Regular Session, to assure that courts, in making a determination pursuant to subdivision (a) shall not focus upon the fact that a parent has a physical disability. The Legislature declares that a physical disability, such as blindness or deafness, is no bar to the raising of happy and well-adjusted children and that a court's determination pursuant to subdivision (a) should center upon whether a parent's disability prevents him or her from exercising care and control. (Stats. 1985, ch. 1548, § 1.)

[4]In fact, we implied as much when in 1916 we posed this rhetorical question. "A wayward minor female, with a strong inclination toward a wild and indifferent life, obtuse to perceptions of morality, without a parent or guardian capable of properly controlling her or her conduct, holding clandestine meetings at late hours of the night with a married man, almost old enough to be her father, and permitting him to take liberties with her person which, in

engages in conduct encouraging a minor to be promiscuous "causes or tends to cause and encourages" her to come within the provisions of section 300, thereby contributing to her delinquency within the meaning of Penal Code section 272. (See, e.g., *People* v. *Mathis* (1985) 173 Cal.App.3d 1251, 1257 [219 Cal.Rptr. 693] [contributing is lesser included in the crime of pandering where the age of the victim is specified in the information].)

However, engaging a minor in a single act of sexual intercourse does not cause her to be "promiscuous", nor does it "[cause or tend] to cause" her to have "No parent . . . willing to exercise or capable of . . . or . . . actually exercising care and control." Were it otherwise, dependency could be established under section 300, subdivision (a) simply by proof that without her parents' knowledge or consent and perhaps in violation of their express orders to her, the minor engaged in an act of sexual intercourse. We do not believe the statute contemplates state interference in the parent-child relationship on this basis alone.

Although it is true the activities sufficient to support a conviction for contributing need not actually result in the minor's delinquency (*People* v. *Norris, supra,* 254 Cal.App.2d at p. 300; *People* v. *Wilhite* (1920) 49 Cal.App. 246, 250-251 [193 P. 151]), a single act of sexual intercourse neither "causes [nor] tends to cause [or] encourages" the minor to escape parental control. We therefore conclude the 1975 amendment to section 601 has changed the definition of contributing so that it no longer is a necessarily lesser included offense within unlawful sexual intercourse. The trial court did not err in failing sua sponte to instruct the jury on the lesser offense of contributing.[5]

## II

At sentencing, defendant's attorney argued for the lower term. The court stated the lower term would be imposed. Counsel then submitted the issue and the court sentenced defendant to the lower term, stating only that "this was not an aggravated offense, and I agree there are mitigating circumstances." While these are adequate reasons to justify the lower term, they do not justify imprisonment and the court gave no reasons for that sentencing choice.

---

nine cases out of ten, will lead to immoral practices of the grossest character, what more should be required to establish a case of contributing to the dependency of a minor, within the contemplation of the juvenile court law?" (*People* v. *Oliver, supra,* 29 Cal.App. at pp. 583-584.)

[5] There was no request for an instruction on contributing and the court is not required sua sponte to instruct on lesser *related* offenses. (*People* v. *Geiger* (1984) 35 Cal.3d 510, 526 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055]; italics added.)

Defendant characterizes this omission as error in failing to "state reasons for denying probation." However the error is characterized, denial of probation is almost always the precursor to imposition of a term of imprisonment and imprisonment is a sentencing choice for which reasons must be given. (Pen. Code, § 1170, subd. (c); see rule 439(d), California Rules of Court; *People* v. *Gopal* (1985) 171 Cal.App.3d 524, 548 [217 Cal.Rptr. 487].) Reasons for imprisonment implicitly explain the decision to deny probation (*People* v. *Ramos* (1980) 106 Cal.App.3d 591, 599 [165 Cal.Rptr. 179]). While failure to give reason for imprisonment as the sentencing choice is error, the error is harmless where the upper term is imposed, since it is assumed the same reasons given to justify the upper term would suffice to justify imprisonment. (*Id.,* at p. 600; *People* v. *Butler* (1980) 107 Cal.App.3d 251, 254-255 [165 Cal.Rptr. 709].) The same rationale does not apply here, for the court imposed the lower term because of the absence of aggravating factors and the presence of mitigating factors.[6] Though counsel did not argue for or apparently expect probation, the court was not relieved of its obligation to make a record of the reasons for its sentence choice.

## III

Defendant contends he has earned two days of conduct credits by serving three days of actual custody.

Penal Code section 4019, specifies how prisoners may obtain certain credits. Subdivisions (b) and (c) of that section provide: "for each *six-day period* in which a prisoner is confined in or committed to a specified facility" one day shall be deducted from his period of confinement for performing labors, and one day shall be deducted for compliance with the rules and regulations of the facility. Subdivision (f) of that section provides "if all days are earned under this section, a term of six days will be deemed to have been served for every *four days spent in actual custody*." (Italics added.)

Defendant did not serve four days; he served only three days. Therefore he cannot be deemed to have served six days and he is entitled to no "good-time" credits. Defendant argues *In re Jackson* (1986) 182 Cal.App.3d 439 [227 Cal.Rptr. 303] alters this simple result. *Jackson* is distinguishable. Jackson served eight days, stretched over two weekends, and the issue

---

[6] The probation report stated in part: "The defendant does not appear to be a good candidate for probation. Due to the fact that the defendant abuses alcohol and due to the nature of his crime, he would be considered a high risk for probation. Another fact that I consider disturbing is that the defendant still does not admit the crime. He insists that he never touched the victim, only talked to her. [¶] Because of the defendant's prior record and for the protection of society, it will be recommended that probation be denied. Considering all of the circumstances of this offense however, it would seem that the lower term would be appropriate."

before the court was whether custody for conduct credit purposes needs to be continuous. The court held it does not. (*Id.* at pp. 443-446.) The case does not address whether a defendant who has served less than four days can receive "good-time" credits.

## IV

The conviction is affirmed but the sentence is vacated and the cause remanded to the trial court with directions to resentence defendant in accord with the views expressed herein.

Blease, J., and Marler, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 30, 1989.